IN THE UNITES STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Gordon P. Gallagher

Criminal Case No.  12-po-3-GPG

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSEPH S. WAGNER,

Defendant.

___

**MEMORANDUM OF DECISION
AND ORDER
AMENDED AS TO PAGE 5**
___

This matter was tried to the Court on October 17 and October 29, 2012.  The Defendant is charged by an Information (the Superseding Information, docket number 17) with three petty offenses: (1) damaging a natural feature or other property of the United States in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.261.9(a); (2) removing a natural feature or other property of the United States in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.261.9(b); and (3) damaging a natural feature or other property of the United States in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.261.9(a).

**I find the Defendant GUILTY of all three offenses.**

Each offense charged is a Class B misdemeanor. A Class B misdemeanor is a petty offense. 18 U.S.C. § 19. There is no right to a jury trial where the charge is a petty offense. Fed. R. Crim. P. 58(b)(2)(F). Although not requested to do so by the parties, this Memorandum of Decision and Order contains specific findings of fact consistent with the provisions of Fed. R. Crim. P. 23(c). *See United States v. Unser*, 165 F.3d 755, 760 and n.3 (10th Cir. 1999).

Section 551, Title 16 of the United States Code, provides in relevant part:

> **Protection of national forests; rules and regulations. . . .**
>
> The Secretary of Agriculture shall make provisions for the protection against destruction by fire and depredations upon the public forests and national forests which may have been set aside or which may be hereafter set aside . . .; and he may make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction; and any violation of the provisions of this section . . . or such rules and regulations shall be punished by a fine of not more than $500 or imprisonment for not more than six months, or both.

Sections 261.9(a) & (b), Title 36 of the Code of Federal Regulations, provide:

> The following are prohibited:
>   \*  \*  \*
> (a) Damaging any natural feature or other property of the United States.
>
> (b) Removing any natural feature or other property of the United States.

I.

The following relevant facts are undisputed, and I find them to be true beyond a reasonable doubt:

(1)  Defendant owns a large property in the State of Colorado (hereinafter "the Wagner property").

(2)  The Wagner property abuts National Forest Service Land, namely the Gunnison National Forest – Hot Springs Creek (hereinafter "NFS land").

(3)  NFS land is property of the United States of America.

(4)  National Forest Service employees and contractors conducted a reclamation project to an area near the West side of the Wagner property. That project essentially entailed filling in an unwanted or unauthorized pond with pit run dirt from the Black Sage Pit, contouring and seeding the filled area and the area near the work site.

(5)  Much of the aforementioned work occurred in September, 2012 with the completion of the work being on or around September 27, 2012.

(6)  On or near the West property line of the Wagner property are some large concrete blocks as well as the foundation for an old structure of some sort.

(7)  Defendant had concerns regarding water or moisture "subbing" under the concrete blocks and perhaps under the old foundation.

(8)  Following the conclusion of the NFS work on September 27, 2011, some amount of area on the North side of the work site was re-graded (there is a dispute as to how much area was re-graded).

(9) During the time period from September 27, 2011 to April 19, 2012 an area on the East/ central portion of the work site was harrowed in some fashion (there is a dispute as to how the harrowing occurred and as to the amount of land harrowed).

II.

There is no real dispute in this matter that Defendant re-graded some area around the concrete blocks on the West side of the Wagner property. This re-grading occurred on NFS land. There is a dispute as to how much NFS land was re-graded. Defendant essentially asserts that he moved a small amount of dirt near the concrete blocks. The government asserts that Defendant moved a much larger amount of dirt. This dispute is relevant to count 1.

There is a dispute as to whether Defendant removed any NFS service property. This dispute is relevant to count 2.

There is no real dispute as to whether NFS land was harrowed on or between September 27, 2011 and April 19, 2012. There is a dispute as to who did the harrowing and as to how much area was harrowed. This dispute is relevant to count 3.

At or near the completion of the work on September 27, 2012, there was some discussion between Defendant and Mr. Kevin Heidenreich (the NFS equipment operator). This discussion included a question from Defendant as to whether "this was the final grade?" to which Heidenreich answered in the affirmative. There had been a previous discussion between Defendant and Mr. Doug Marah (supervisory civil engineering tech) as to whether Defendant

could re-grade an area around the concrete blocks and as to whether Defendant could recover some rocks on the NFS side of the property line.

The Court is persuaded in particular by Government exhibit number 15. This exhibit is an overview picture of the work site taken from the North and looking generally South. The Wagner property is on the left side of the picture. The picture shows, on the South side, the final grade as accomplished by Mr. Heidenreich before he left the property on September 27, 2011. The picture also shows, on the North side, the re-grade as perpetrated by Defendant after the conclusion of work by NFS employees. While the perspective is not perfect and no GPS measurement has been provided, it appears that between 25% and 33% of the total project was re-graded. The Court is convinced that the re-graded area or most of it had been worked on by Mr. Heidenreich prior to his leaving the property on September 27, 2011. The Court is convinced that the re-graded area matched the Southern area with regard to contours and other attendant circumstances (prior to being re-graded by Defendant). This would include having been seeded with grass seed as was required and completed as part of the project specifications.

There is no dispute that Defendant re-graded some area of the work site, in fact he admits as much. There is a dispute as to how much was re-graded. The Court finds that the picture in Government exhibit 15 shows the extent of the re-grade as being between 25% and 33% of the total project site and that the re-grade occurred on NFS land. The Court finds, beyond a reasonable doubt, that Defendant, by re-grading NFS land, damaged any natural feature or other property of the United States (~~count 2~~, amended to reflect the correct count/ count 1).

There is no real dispute as to the fact that NFS, in some fashion, spread grass seed on the project site prior to completion on September 27, 2011. The seeded area included the area re-

5

graded by Defendant. The Court credits the testimony of witness Mr. Heidenreich who stated that the re-graded area was certainly 6 to 8 inches lower than the undisturbed area on the South side of the project site. Necessarily, this lower/ North area would have included grass seed. Government exhibit 15 shows a new topsoil pile on the Wagner property close to the West property line. This topsoil pile was not present at the conclusion of the work on September 27, 2011. Government witnesses testified that this topsoil pile could not contain all of the soil (6 to 8 inches from 25% to 33% of the work site) which had been removed. The Court believes that some amount of topsoil and some amount of topsoil including grass seed were removed from NFS land by the Defendant. The Court finds beyond a reasonable doubt that some amount of top soil containing grass seed was removed from the property of the United States by Defendant (count 2).

At some point between September 27, 2011 and April 19, 2012, a significant portion of the remainder of the site was harrowed as is best shown in Government exhibit 20. Defendant's testimony was that his employee(s) did this harrowing in an attempt to clean up after themselves when they were moving a range fence off of NFS land. The Court does not find this testimony to be credible. The amount of area harrowed and the regularity of such harrowing is not consistent with the method or reason provided by Defendant. Defendant's testimony was that his employee(s) conducted the harrowing by pulling some device behind them on a chain. The Court believes that Defendant, dissatisfied with NFS work and believing he could do it better, harrowed a significant part of the remainder of the property. The Court finds beyond a reasonable doubt that Defendant further damaged NFS land between September 27, 2011 and April 19, 2012 by harrowing a section of that land (count 3).

III.

Defendant argues that his actions, if true, were allowed under certain legal theories and by certain actions of the United States or representatives of the NFS. In particular, Defendant argues that he had special use authorization, that he was entrapped by estoppel and that he was entrapped by outrageous conduct. The Court is not persuaded by any of these arguments and will address them in turn.

First, as to the special use authorization argument: The Court does not find this argument to be relevant. The Court is finding Defendant guilty or removal and damaging based not on the range fence. The Court believes that the special use authorization applies to the range fence and is thus irrelevant to the Court's decision. The Government makes clear, in the Government's rebuttal Closing Argument, that the range fence is not at issue and that the range fence did not belong to the Government.

Second, as to the entrapment by estoppel argument: The Defendant essentially argues that he was entrapped because Mr. Marah allowed him to re-grade the area around the concrete blocks and to remove some number of rocks that were near the property line but on NFS property. There was various testimony on this issue. The Court finds that NFS employees, most likely Mr. Marah, in an attempt to mollify Defendant, did tell him that he could get a limited number of rocks that were near the property line and that he could shovel some dirt up against the concrete blocks in an effort to assuage his fears about subbing. In no way did this very limited permission allow Defendant to re-grade between 25% and 33% of the total project. Such re-grading was so far outside the bounds of the limited permission given by NFS employees as to be absurd.

Finally, as to the entrapment by outrageous conduct argument: The Defendant essentially argues that he was so entrapped because he was given express approval to engage in the actions he took and thus it would be fundamentally unfair to convict Defendant of these crimes. Defendant further purports, in association with this argument, that a failure to properly communicate with Defendant in effect mislead him into believing he could take the actions he engaged in. As stated above, the Court believes that Mr. Marah, again in attempt to mollify Defendant, told Defendant that he could get some limited number of rocks from NFS land and could put some dirt around the base of the concrete blocks. The Court does not believe that Government agents acted outrageously thus entrapping Defendant into the actions he took.

The two prior arguments essentially go to the heart of the present dispute and to why the Court does not credit Defendant's arguments as to estoppel. There is no dispute that the NFS was engaging in a reclamation project and that Defendant paid $15,304.75 as an assessment. A substantial area was filled, graded and seeded. As stated above, 25% to 33% of this work was initially ruined or re-done by Defendant, depending on your point of view. More changes were later imposed upon the land and thus the NFS by way of the harrowing associated with count 3. The argument that the limited permission given by Mr. Marah would in some way allow re-grading of 25% to 33% of the total project is absurd at best. The Court specifically finds that, if estoppel is a legal defense to these charges, the Government has proven each count beyond a reasonable doubt and has proven beyond a reasonable doubt that the estoppel claims do not apply.

IV.

THUS:

I find, beyond a reasonable doubt, that the Defendant damaged a natural feature or other property of the United States on or about September 27, 2011 (count 1). Consequently, I find the Defendant GUILTY of violating 16 U.S.C. § 55; 36 C.F.R. § 261.9(a).

I find, beyond a reasonable doubt, that the Defendant removed a natural feature or other property of the United States on or about September 27, 2011 (count 2). Consequently, I find the Defendant GUILTY of violating 16 U.S.C. § 55; 36 C.F.R. § 261.9(b).

I find, beyond a reasonable doubt, that the Defendant damaged a natural feature or other property of the United States on or between September 27, 2011 and April 19, 2012 (count 3). Consequently, I find the Defendant GUILTY of violating 16 U.S.C. § 55; 36 C.F.R. § 261.9(a).

IT IS ORDERED THAT:

(1) On or before **December 13, 2012**, the parties shall file briefs on the issue of whether a Presentence Investigation and Report is necessary in this case;

(2) On or before **December 31, 2012**, the Government shall file any request for restitution, if any is sought. This request shall state, with specificity, the amount sought and what this amount would pay for. Defendant shall then have 20 days to respond to the Government's restitution request. Defendant shall state, with specificity, any amounts agreed to and any amounts in disagreement. The Government shall have an additional 10 days to reply to the Defendant's response. If either party believes that a contested hearing is needed on the issue of restitution, they shall so state in their written filing (the Government may so state in their Reply after finding out if the Defendant disputes any amount) and include for the Court an estimated time for the length of such hearing.

(3) A final judgment will not enter until the date of sentencing, with the time for appeal commencing on that date.

Dated December 21, 2012.

BY THE COURT:

s/ Gordon P. Gallagher
United States Magistrate Judge